J-A08038-17

2017 PA Super 119

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                :           PENNSYLVANIA
                                :

           v.                  :

TARIQ RASHID                  :

           Appellant      :   No. 121 EDA 2016

Appeal from the Judgment of Sentence December 15, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0000494-2015

BEFORE:   PANELLA, LAZARUS, JJ., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:         **FILED APRIL 21, 2017**

Appellant Tariq Rashid appeals from the judgment of sentence of life in prison entered in the Court of Common Pleas of Philadelphia County on December 15, 2015, following his jury trial convictions of one count each of First Degree Murder, Possession of an Instrument of Crime and Firearms not to be carried without a license.[1]  We affirm.

The trial court aptly set forth the relevant facts herein as follows:

FACTS
    Around 3:00 A.M. on May 23, 1999, the decedent, Warner Freeman ("Freeman") also known as "Hip hop" was playing a dice game on Landsdowne Avenue between 55th and Allison Streets in the City and County of Philadelphia. (N.T. 12/9/15 at 71-76) Rashawn Holmes ("Holmes") also known as "Shawn" and Appellant's cousin, Harvey Meyers ("Meyers") joined the game. Id.; N.T 12/14/15 at 16. An argument ensued between Freeman

---

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa. C.S.A. §§ 2502(a), 907, 6106(a)(1), respectively.

and Meyers, and Freeman got into a car and drove away. (N.T. 12/9/15 at 76-88) The group was still playing dice when Freeman returned shortly thereafter, exited the car, resumed his argument with Meyers and shot him three to four (3-4) times in the upper body with a handgun. Id. Meyers died as a result of his wounds. Holmes made a statement to police and identified Freeman, who was unknown to him, as the shooter. Id.

On June 13, 1999, Antonio Connor ("Connor") also known as "Tone" was double-parked in his Oldsmobile Cutlass at the 1400 block of Redfield and Master Streets in the City and County of Philadelphia. Id. at 196-213. Freeman, seated in the passenger seat of the Cutlass, was to meet Kareem McBride ("McBride") at that location. (N.T. 2/11/15 at 103-110). Both Connor and Freeman lived in the area. (N.T. 12/9/15 at 191). Freeman had the passenger side window rolled down and was talking to various people he knew from the neighborhood. Darnell Jones ("Jones") spoke to the men briefly and walked southbound. (N.T. 12/1/15 at 146-147). Jones saw the Appellant at the end of the block and Appellant asked who was in the Cutlass. Id. Jones indicated it was Freeman and Connor and Jones watched Appellant get into his car and drive in the direction of the double-parked Cutlass. Id. Freeman was talking to his friend William Cummings ("Cummings"), a pedestrian who was also from the neighborhood, when Appellant pulled up behind Connor's Cutlass and exited his own vehicle. (N.T. 12/9/15 at 128-129, 132-148). Cummings observed Appellant, who was known to him, walking towards Freeman's side of the car. Id. Jones could also see Appellant from his vantage point. Cummings saw Appellant reaching for his waistband and Cummings ran. (N.T. 12/9/15 at 142-144). Appellant fired three to four (3-4) shots at Freeman, striking him. McBride, who was on the 1300 Block of Redfield Street, also saw the incident. (N.T. 12/9/15 at 108-122). Connor transported Freeman to Lankenau Hospital, where he was pronounced dead at 10:35 P.M. Id. at 197.

An autopsy was performed by Deputy Medical Examiner Dr. Ian Hood. (12/11/15 at 252-276). Upon reviewing the case file and photos of Freeman's autopsy, Chief Medical Examiner Dr. Sam Gulino testified as Dr. Hood was no longer with the Philadelphia Medical Examiner's Office. Id. Dr. Gulino determined the cause of death was a gunshot wound to the torso. Id. The manner of death was found to be homicide. Id. Freeman was shot approximately two (2) times, one (1) bullet went through the right forearm exited, and entered Freeman's right chest,

where the bullet passed through Freeman's right and left lungs, aorta and liver. Id. The other bullet entered the left forearm. Id. Three (3) bullets were recovered from Freeman's body, one (1) was a bullet from a prior shooting. Id. Through ballistics analysis the bullets from the fresh wounds were found to be of .38 caliber, and fired from the same gun. (N.T. 12/14/15 at 45, 53).

On March 1, 2000, Jones was in federal custody and engaged in a proffer discussion wherein he outlined his knowledge of Freeman's death. (12/10/15 at 134-140). Jones alleged that Connor was a "drug mule" for Michael Gaffney ("Gaffney") also known as Mikael.[4] Id. at 97-101. Jones also alleged that he knew Appellant to carry a .25 caliber handgun. Id. at 148.

The homicide of Freeman remained stagnant for approximately thirteen (13) years until November 19, 2014 when Cummings, in custody, made a statement to police outlining the incident. (N.T. 12/9/15 at 146-I47). It was stipulated by and between counsel that at the time of the shooting, Appellant did not have a permit to carry a firearm, and he had been arrested December 2, 2014. (N.T. 12/14/15 at 57-58).

_____

[4] Gaffney's alleged drug involvement with others is what defense counsel refers to as the "Gaffney Organization."

Trial Court Opinion, filed 7/14/16, at 3-5.

Appellant filed a timely notice of appeal on December 31, 2015. On February 24, 2016, the trial court issued its Order to File Statement of Errors Complained of on Appeal. Appellant complied and filed the same on March 16, 2016 wherein he raised six issues. In his appellate brief, Appellant presents the following five questions for our review:

1. Did the trial court err and violate [Appellant's] right to present a defense by precluding evidence that tended to prove that someone other than [Appellant] had a motive for committing the murder?

- 3 -

2.     Did the lower court err when it precluded the defense from impeaching a witness by concluding that the witness' Fifth Amendment privilege applied when it clearly did not?

3.     Did the lower court err when it precluded the defense from impeaching an alleged eyewitness with his testimony from another matter?

4.     Did the trial court err by allowing the Commonwealth to introduce evidence that [Appellant] possessed a handgun, where it was physically impossible for that gun to be involved in the crime?

5.     Did the trial court err in refusing to grant a mistrial after the prosecutor improperly attacked the defense's character witnesses with irrelevant and prejudicial questions and behavior?

Brief for Appellant at 4-5.

Appellant's first four issues challenge the trial court's decisions pertaining to the admission of evidence at trial. Our standard of review for evidentiary matters is well-established:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

**Commonwealth v. Antidormi**, 84 A.3d 736, 749 (Pa.Super. 2014) (citation omitted).

Initially, Appellant avers that at numerous times throughout trial he sought to introduce testimonial evidence that Connor had a motive to kill

- 4 -

Freeman based upon the men's involvement in the "Gaffney Organization."

Appellant reasons that "if the Commonwealth was allowed to argue that [Appellant] had a motive to kill Freeman, there is no reason why [Appellant] should not have been allowed to do the same thing about somebody else." Brief for Appellant at 12. Appellant posits our Supreme Court's decision in *Commonwealth v. Ward*, 529 Pa. 506, 605 A.2d 796 (1992) is instructive herein. In that case, the Court held it was prejudicial error for the trial court to exclude testimony of a police detective and a Red Cross worker which would have supported the defense theory that other individuals had a motive to commit the crimes of which the defendant had been convicted and contradicted the Commonwealth's evidence of the defendant's own motive.

Herein, the trial court ruled evidence regarding the operations of the "Gaffney Organization" was inadmissible and explained its rationale in doing so as follows:

> [ ] Appellant was not precluded from introducing an alternative theory or arguing motive, he was however precluded from introducing irrelevant evidence. In his opening statement, defense counsel presented the theory that the "Gaffney Organization[,]" a purported drug operation from the neighborhood, was responsible for Freeman's murder in 1999 and that Connor, a mule for Gaffney, had motive to kill Freeman. As an initial matter, determining whether Connor or other individuals had been involved with the Gaffney Organization in selling or moving illicit substances was of no moment in Freeman's death as that information would not have made it less probable that Appellant shot Freeman. Cummings, McBride, and Jones identified Appellant as the shooter. (N.T. 12/9/15 at 150-151; 12/11/15 at 105; 12/10/15 at 143). Appellant was permitted to question Connor and Cummings on cross-examination about their knowledge of individuals with the last

name Gaffney who were from the neighborhood. (N.T. 12/9/15 at 167-169, 254; 12/10/15 at 85-[86]). Connor confirmed knowing Mikael Gaffney and Andre Gaffney. (N.T. 12/9/15 at 167-169. Connor testified he had no business interests with [the] aforementioned people. Id. at 255. Trial counsel was free to ask Connor if he wanted Freeman dead or had any prior knowledge about an attempt on Freeman's life, however counsel failed to do so. Any evidence Appellant wished to introduce to support an alternative theory was subject to the Pennsylvania Rules of Evidence, as such no relief is due.

Trial Court Opinion, field 7/14/16, at 6-7.

Following a careful review of the certified record, the parties' submissions and the trial court's Rule 1925(a) Opinion, we find no error. A trial court does not abuse its discretion when it precludes cross-examination based upon inadmissible evidence. *Commonwealth v. Hyland*, 875 A.2d 1175, 1187 (Pa.Super. 2005). Appellant sought to introduce evidence pertaining to a written summary of Jones' proffer to federal authorities in 2000. Known as a 302, the typewritten document had been prepared by the FBI and consisted of a "little summary that they write for themselves as to what the witness says and the information that the witness gives." N.T., 12/10/15, at 97. When the trial court questioned him whether the 302 would constitute hearsay, defense counsel responded that he was not offering it for the truth of the matter, but rather "offering it for is this is what they do." *Id*. at 106.

Counsel clarified that the document was necessary to develop his defense in that it would allow Jones to testify regarding information he learned while in jail or personally saw about the Gaffney Organization which

he had shared in an effort to receive a reduced sentence on pending charges. *Id*. at 108-100. Ultimately, the trial court determined that defense counsel "will be permitted to ask some limited questions along the line that [he] did this morning with the statement from Mr. Cummings[]" and clarified that "[i]f at some point the Commonwealth begins to feel that it is delving, they can raise an objection and I will rule on it as we get to it." *Id*. at 110-11.

As the trial court observed in its Rule 1925(a) Opinion, it permitted Appellant to cross-examine Connor based upon his alleged business dealings with the Gaffneys, and Connor admitted to knowing some of the Gaffneys. N.T., 12/9/15, 254-58, 261, 268. In addition, Appellant cross-examined Jones and Cummings regarding the drug-related activities in which the Gaffneys and Connor had engaged. N.T., 12/9/15, 167-69; N.T., 12/10/15, 21-13, 180-84. Moreover, during closing argument defense counsel stated Connor had been involved in a drug organization and suggested he had a motion to kill Freeman. *See* N.T., 12/14/15, 135-36, 150-53. As such, Appellant's claim the trial court's evidentiary rulings prevented him from introducing to the jury his theory that someone else had a motive to kill Freeman is meritless.

Appellant next argues the trial court erred when it precluded him from questioning Connor regarding whether he had sold drugs for the Gaffney Organization in 1999 on the basis that the witness's Fifth Amendment

privilege applied to his response. Appellant reasons that because the statute of limitations for prosecuting an offense under the Controlled Substance, Drug, Device and Cosmetic Act is five years under 42 Pa.C.S.A. § 5552(b)(2) and had expired in 2004, Connor could no longer assert the Fifth Amendment privilege at Appellant's trial. Brief for Appellant at 13, citing **Brown v. Walker**, 161 U.S. 591[, 16 S.Ct. 644] (1896); **Stogner v. California**, 539 U.S. 607, 620[, 123 S.Ct. 2446, 2455] (2003).

Although Appellant represents in his appellate brief that Connor was asked on cross-examination whether he ever had sold drugs for the Gaffney Organization in 1999, the exchange at issue was as follows:

> [Defense counsel]: You **never** sold kilos or delivered kilos of cocaine for the Gaffney Family?
> [The Prosecutor]: Objection.
> The Court: Sustained.
> [Connor]: If so. That ain't what we're here for today.
> The Court: He does not have to answer that. That is a Fifth Amendment question. He does not have to answer.
> [Defense Counsel]: Judge, can I approach?
> The Court: No, sir.
> [Defense Counsel]: There's no Fifth Amendment on a statute that expired in 1999.
> The Court: I'm not going to argue that with you. I'm not going to argue with you at all. I have sustained the objection.

N.T., 12/9/15, at 255-56 (emphasis added).

Defense counsel's initial question did not reference a specific point in time, and it was only after the trial court sustained the Commonwealth's general objection on the ground that Connor's response could implicate his Fifth Amendment rights did defense counsel reference alleged drug-related

- 8 -

activity that had occurred in 1999. It would appear, then, that the question originally was posed for the broader purpose of suggesting that Connor's involvement in drug trafficking with the Gaffneys might have provided him with a motive to kill Freeman.

Indeed, Appellant admits that "[t]he whole thrust of the defense theory in this case was that Connor was a drug dealer for the Gaffney Organization, and thus had a motive to kill Freeman. . . . Of course, the threshold item of proof to make this point was to show that Connor was in fact a drug dealer." Brief for Appellant at 13-14. Thus, Connor's privilege against self-incrimination was implicated by counsel's question, for Appellant sought to reveal a motive for Connor to kill Freeman, and there is no statute of limitations for the crime of murder. "The [Fifth Amendment] privilege extends not only to statements that by themselves would be evidence that the declarant has committed a crime, but also to assertions that would be 'a link in the chain' of evidence needed to convict." *Commonwealth v. Treat*, 848 A.2d 147, 148 (Pa.Super. 2004) (citation omitted). Consequently, the trial court's ruling was not in error.

Appellant further avers he should have been permitted to impeach Cummings with statements the latter had made during his sentencing hearing in Delaware County following his conviction of second-degree murder, Carrying a Firearm without a License, and Criminal Conspiracy to Commit Robbery. Presumably, at that time Cummings had denied

committing the homicide, although at Appellant's trial he stated that the one mistake he had made in life was "committing murder." N.T., 12/10/15, at 43. The trial court sustained the Commonwealth's repeated objections to defense counsel's questions regarding whether Cummings at any point in time had represented in a court of law that he was not guilty of the murder. *Id*. at 46.

In claiming that this was in error, Appellant reasons that this Court's decision in **Commonwealth v. Hensley**, 441 A.2d 431 (Pa.Super. 1982) is controlling. Therein, we reiterated the long-settled principle that a prior inconsistent statement may be used to impeach a witness. In a split decision, we ultimately found that the defendant was entitled to a new trial as he had been denied the opportunity to impeach an important witness at his second murder trial concerning prior inconsistent testimony from that witness at the first trial regarding the location of shotgun shells recovered near the victim's body. *Id*. at 434-35.

Clearly, Appellant's reliance upon **Hensley** is misplaced. Herein, Appellant sought to impeach Cummings regarding Cummings' own criminal history, whereas the defendant in **Hensley** was prohibited from presenting evidence directly connected to the murder for which he was on trial. "[A] defendant's right of confrontation includes the right to cross-examine witnesses about possible motives to testify. However, a witness may not be contradicted on 'collateral' matters, ... and a collateral matter is one which

has no relationship to the case at trial. The scope of cross-examination is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion." **Commonwealth v. Saunders**, 946 A.2d 776, 786 (Pa.Super. 2008) (citations omitted).

Herein, the trial court determined that Cummings' convictions were not the result of crimes of dishonesty, and, therefore, the admission of the notes of testimony from the sentencing hearing therein was within its discretion. The trial court further found the "[a]dmission of these notes would have diverted the jury's attention away from its duty of weighing the evidence impartially by emphasizing the fact that Cummings had been convicted of these crimes and delving into the circumstances under which he was found guilty." Trial Court Opinion, filed 7/14/16, at 10.

In addition, our review of the trial transcript reveals defense counsel repeatedly attacked Cummings' veracity and character and highlighted his crime-ridden past on cross-examination. N.T., 12/9/15, at 159-180; 12/10/15, at 9-44, 78-91. Again, during closing argument, defense counsel referred to Cummings as a "serial manipulator" and "serial fabricator of information and evidence," N.T., 12/14/15, at 136, and reiterated information elicited on cross-examination to illustrate this point as well as Cummings' motive for working with authorities. **Id**. at 136-145. As such, even had Appellant been permitted to impeach Cummings' credibility with his prior, sworn inconsistent statement from his sentencing hearing, such

impeachment testimony would have been cumulative of the multitude of inconsistencies previously revealed. No relief is due.

Appellant next contends the trial court erroneously had permitted the Commonwealth to introduce testimony from Jones that Appellant typically carried a .25 caliber handgun, despite uncontradicted evidence that the murder weapon was a .38 or a .380. Brief for Appellant at 16 citing N.T., 12/10/15, at 148. Appellant maintains that any probative value arising from the trial court's decision to allow such testimony was outweighed by its "crippling" prejudicial effect as "the Commonwealth used the evidence to portray [Appellant] as someone who wields firearms." *Id*. at 19.[2]

Initially, we note that "for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. A party suffers prejudice when the trial court's error could have affected the

_____

[2] The Commonwealth avers Appellant has waived this claim for his failure to place a contemporaneous objection on the record because he neither asked that Jones' statement be redacted nor objected to it at the time it was introduced as a prior inconsistent statement through the testimony of Special Agent Vito Roselli of the FBI. In addition, the Commonwealth states Appellant "did not object at all" when Jones indicated he did not remember saying that Appellant shot the victim with a .25-caliber shotgun. Brief for the Commonwealth as Appellee at 27-29. However, Appellant stated "Objection. Objection to the answer" to the prior query at which time the prosecution asked Jones, apparently incorrectly, whether he remembered "the detective asking, 'How did you know that [Appellant] has a .45 caliber?'" *See* N.T., 12/10/15, at 147-48. For this reason, we decline to find Appellant did not raise this issue in a timely fashion before the trial court.

verdict." *Commonwealth v. Tyack*, 128 A.3d 254, 257 (Pa.Super. 2015) (citation omitted).

A review of the relevant exchange at trial reveals that despite Appellant's argument, Jones never told the jury that Appellant carried a .25 caliber handgun. In fact, he testified that he did not remember ever making such a statement.

> [The prosecutor]: Do you remember the detective asking, How did you know that [Appellant] has a .45-caliber?
> [Defense counsel]: Objection. Objection to the answer.
> [The Court]: Overruled.
> [The prosecutor]: Do you remember answering that question?
> [Jones]: No.
> [The prosecutor]: I want you to look at page four for me. Are you at the top?
> > Q: "How do you know [Appellant] had a .25-cal?
> > A: That was the gun he carried."
> > Do you see that answer?
> [Jones]: Yes.
> [The prosecutor]: Do you remember giving that answer?
> [Jones]: No.

N.T. 12/10/15, 147-48.

Clearly, Jones' testifying as to his inability to recall having said Appellant possessed a .25-caliber handgun was not harmful to Appellant. To the contrary, Jones' memory lapse worked to Appellant's advantage as it called into question whether Appellant possessed a firearm at all and suggested to the jury the murder weapon was not his. This is especially true in light of the fact the Commonwealth did not introduce a .25 caliber handgun into evidence and ballistic evidence revealed the bullets recovered

from the crime scene could have been expelled from either a .380 caliber or a nine-millimeter. N.T., 12/14/15, at 54. In addition, Appellant questioned Jones' credibility during closing argument. *Id.* at 153-162, 163-170. In light of the foregoing, Appellant's claim Jones' perceived testimony in this regard was "crippling" in its prejudicial effect is without merit.

Lastly, Appellant maintains the trial court abused its discretion in denying his motion for a mistrial following the Commonwealth's alleged improper questioning of Appellant's character witnesses regarding his prior drug activity. Appellant asserts that "drug dealing in and of itself is not pertinent to the issue of whether someone is peaceful and non-violent" and that such queries violated the trial court's pretrial order specifically excluding any mention of these alleged activities. Brief for Appellant at 21. In support of his claim the questions deprived him of a fair trial, Appellant states "[t]he prosecutor's smear of [Appellant] was bolstered by her tactics of waving her file around and asking questions about specific dates, locations and aliases so as to allow the jury to infer that she was reading from [Appellant's] rap sheet." Appellant concludes that a mistrial was the sole remedy for such "outrageous conduct." *Id*. at 22.

In considering this argument, we are governed by the following well-settled standard:

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and

allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, ... assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa.Super. 2009) (citation omitted). The remedy of a mistrial is an extreme one and is required only when an incident is of such a nature that its unavoidable effect deprives a defendant of a fair and impartial tribunal. *Id.*

Pa.R.E. 405, entitled "Methods of Proving Character," provides, in relevant part:

**(a) By Reputation.** When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation. Testimony about the witness's opinion as to the character or character trait of the person is not admissible.
(1) On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct probative of the character trait in question.
(2) In a criminal case, on cross-examination of a character witness, inquiry into allegations of other criminal conduct by the defendant, not resulting in conviction, is not permissible.

Pa.R.E. 405(a).

Appellant's sister Sharon Woods-Ruffin testified that Appellant had a reputation of "being a peaceful and respectable individual." N.T. 12/14/15, at 62. On cross-examination, the Commonwealth asked Ms. Woods-Ruffin whether "as far as [her] understanding of peacefulness, would [she] consider a person who deals crack-cocaine to be peaceful?" Appellant's objection to the query was sustained, and the Commonwealth next inquired as to whether Ms. Woods-Ruffin would "consider a drug dealer to be peaceful?" *Id*. at 66. Appellant's objection was overruled, and Ms. Woods-Ruffin responded in the negative. *Id*. at 67, 68. Next, Tracy Lamont Ruffin, Appellant's brother-in-law, testified he was familiar with Appellant's reputation as a peaceful person. *Id*. at 75-76. When questioned as to whether he believed a drug dealer to be a peaceful person, Mr. Ruffin replied "No." *Id*. at 81-82.[3] Similarly, Shaheedah Tinsley, a family friend, explained that Appellant had "an excellent reputation" for peacefulness. *Id*. at 86-87. On cross-examination, the Commonwealth asked Ms. Tinsley if a drug dealer in her view is a peaceful person,[4] to which Ms. Tinsley replied, "It depends on the person. In my opinion just from what I grew up around, I've seen peaceful drug dealers and I've seen violent ones." *Id*. at 93-94.

Initially, we note that Appellant seems to have misconstrued the trial court's pretrial order as specifically excluding any mention of Appellant's

---

[3] Defense counsel noted his objection. *Id*. at 81.
[4] No objection was noted. *Id*.

prior drug dealing. In its Rule 1925(a) Opinion, the trial court cites to the notes of testimony from November 9, 2015, wherein it apparently denied Appellant's motion *in limine* pertaining to the ability of the Commonwealth to cross-examine character witnesses about drug dealing. **See** Trial Court Opinion, filed 7/16/16, at 14 citing N.T., 11/9/15, at 10-14. However, a copy of the transcript of the pre-trial hearing held on November 9, 2015, does not appear in the certified record. "It is an appellant's duty to ensure that the certified record is complete for purposes of review." **Commonwealth v. Reed**, 601 Pa. 257, 263, 971 A.2d 1216, 1219 (2009) (citation omitted). "[A]n appellate court cannot consider anything which is not part of the record in the case ... because for purposes of appellate review, what is not of record does not exist." **Commonwealth v. Johnson**, 33 A.3d 122, 126 n. 6 (Pa.Super. 2011), *appeal denied*, 47 A.3d 845 (Pa. 2012) (citations and internal quotation marks omitted). Accordingly, Appellant waived this basis for challenging the trial court's denial of his motion for a mistrial.

With regard to Appellant's position that drug dealing is irrelevant to a consideration of the whether one is peaceful and nonviolent, we note that:

> [t]his Court has consistently repeated the principle that although evidence of good character may not be rebutted by evidence of specific acts of misconduct, a character witness may be cross-examined regarding his or her knowledge of particular acts of misconduct by the defendant to test the accuracy of his or her testimony and the standard by which he or she measures reputation.

- 17 -

*Commonwealth v. Kouma*, 53 A.3d 760, 769 (Pa.Super. 2012) (citation omitted).

Herein, Appellant presented reputation evidence from three witnesses each of whom made a blanket assertion he had a reputation for being peaceful. In doing so, Appellant "opened the door" for the Commonwealth to cross-examine those character witnesses regarding specific instances of conduct which are probative of the peacefulness trait in question. *Kouma*, *supra*; Pa.R.E. 405(a). The prosecutor did not inquire as to whether the witnesses knew Appellant to be a drug dealer or whether they were aware of any specific, prior drug-related conviction he might have had. Therefore, we must determine whether the Commonwealth's general inquiries as to whether the witnesses deemed a drug dealer to be a peaceful person were probative as they relate to the witnesses' standard by which they measure peacefulness.

Clearly, one involved in drug trafficking is in violation of the laws of this Commonwealth, yet the manner in which each of Appellant's character witnesses perceived an individual involved in illicit drug trade varied. While Ms. Woods-Ruffin and Mr. Ruffin indicated they did not view a drug dealer as a peaceful person, Ms. Tinsley's response was more cryptic and had been preceded by a statement that, in her view, only the Pope and Mother Theresa were peaceful individuals. N.T., 12/14/15, at 92. She also indicated that she believed "a crack dealer" and "a college dorm marijuana

dealer" are on the same level. *Id*. at 93. Thus, with these questions, the prosecutor properly probed the standard by which the witnesses evaluated the peacefulness of a drug dealer generally which shed light upon Appellant's character trait which he, himself, had put at issue. Such cross-examination is permissible under Pa.R.E. 405(a) and the trial court properly permitted it.

Furthermore, when considering whether the prosecutor's comments along with her manipulation of files and paperwork during her cross-examination of the character witnesses amounted to prosecutorial misconduct, the trial court noted that in trying to determine Ms. Tinsley's standard of what constitutes peacefulness, the prosecutor inquired about drug dealing at a specific location only in direct response to defense counsel's statement following his objection that: "She may need some more facts. I know I would." Trial Court Opinion, 7/14/16, at 15 citing N.T., 12/14/15, at 94. The trial court opined that:

> The prosecutor's gestures and statements in tandem with questioning character witnesses constituted a proper use of oratorical flair and "vigorous prosecutorial advocacy." Commonwealth v. Miles, 681 A.2d 1295, 1302 (Pa. 1996). Moreover, the jury was instructed on at least two (2) occasions that the statements of counsel do not constitute evidence. (N.T. 12/9/15 at 19; N.T. 12/15/15 at 38). The extreme remedy of a mistrial was not warranted.

*Id*. at 15.

Upon a review of the trial transcripts and defense counsel's own description of the prosecutor's behavior, we agree with the trial court that the prosecutor's actions and comments did not amount to prosecutorial

misconduct when viewed in proper context. Counsel stated the prosecutor: "pulled out her file and looked at it. At the time she talked about the dates of arrests. And she also looked at the file when she described drug activity not just generally but at a specific location, your Honor." Defense counsel also complained the prosecutor: "march[ed] in front of a jury and [ ] [looked] at it and [ ] [pointed] out dates of birth and then [ ] [talked] about drug dealing as [she was] talking about specific locations[.]" N.T., 12/14/15, at 100-01. We find the prosecutor acted well within the bounds of proper advocacy in so questioning Ms. Tinsley. *See Miles*, 545 Pa. at 514, 681 A.2d at 1302. In light of the foregoing, the trial court's denial of Appellant's motion for a mistrial was not an abuse of discretion.

Judgment of Sentence Affirmed.
Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/21/2017</u>