J-S55005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARL WILLIAM SMITH | : | |
| | : | |
| Appellant | : | No. 1315 WDA 2019 |

Appeal from the Judgment of Sentence Entered July 3, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006401-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARL WILLIAM SMITH | : | |
| | : | |
| Appellant | : | No. 1316 WDA 2019 |

Appeal from the Judgment of Sentence Entered July 3, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0014030-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARL WILLIAM SMITH, IV | : | |
| | : | |
| Appellant | : | No. 1317 WDA 2019 |

Appeal from the Judgment of Sentence Entered July 3, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006402-2018

BEFORE:   BOWES, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: APRIL 9, 2021**

Carl William Smith appeals his judgment of sentence of forty years and six months to eighty-one years of imprisonment in the aggregate, which was imposed following his conviction of six sexual offenses involving three minor females.  After thorough review, we affirm.

Appellant was charged with twenty-four counts of sex-related offenses involving his young nieces by marriage, S.M. and her younger sister, K.M.  Another six charges arose from Appellant's sexual misconduct with his childhood friend's young daughter, K.W.   The evidence presented at trial revealed the following.[1]

At some point in late 2011, S.M., born in December 2001, began spending every other weekend with her Aunt Amber and Uncle Carl, Appellant herein.  At that time, the couple lived in Belle Vernon.  On occasion, her younger sister K.M. would come along.  S.M. testified that when she was nine or ten years old, Aunt Amber was at work and S.M. was watching television.  She received a text message from her uncle asking her to come upstairs to his bedroom.  When she entered the bedroom, he shoved her onto the bed, locked the door, and removed her pants and underwear.  He had sexual

_____

[*] Retired Senior Judge assigned to the Superior Court.
[1] Initially, the Commonwealth proceeded to trial against Appellant solely on charges related to S.M. and K.M.  A mistrial was declared when the jury could not arrive at a verdict.  The retrial included the charges involving K.W.

- 2 -

intercourse with S.M. and threatened to be "more aggressive" with her if she told anyone. N.T. Jury Trial, 4/3-8/19, at 78. Afterwards, S.M. went into the bathroom and cried. *Id*. at 79-80. Thereafter, Appellant had sexual intercourse with S.M. on multiple occasions in the bedroom he shared with Aunt Amber in the Belle Vernon home. S.M. did not tell anyone what was occurring because she was too scared. *Id*. at 83.

The sexual abuse continued after Appellant and Aunt Amber moved to a house in Fayette City. S.M. remembered that the bedroom in that house did not have a door. Appellant would push a wardrobe in front of the doorway before forcing S.M. to have sexual intercourse with him. *Id*. at 85-86. He would also touch her vaginal area and place her hand on his penis. *Id*. at 86. Sometimes he would make her to perform oral sex upon him. *Id*. at 87.

When Appellant and Aunt Amber moved into a home in South Park with Appellant's mother and her husband, the abuse continued in his daughter's bedroom. As Appellant's daughter slept in the bed, Appellant would awaken S.M. as she slept on the floor and engage in vaginal intercourse. *Id*. at 89.

It was during this time that S.M. confided in a couple of friends and her cousin Calvin about the sexual abuse. When S.M. was about sixteen years old, Calvin told Aunt Amber about the abuse. *Id*. at 94. Over text messages, Aunt Amber questioned S.M. whether Uncle Carl had ever touched her inappropriately, and S.M. confirmed the specifics of the sexual abuse. *Id*. at 95. Aunt Amber encouraged S.M. to tell her parents and report the

misconduct to police, but S.M. did not want others to know because she was afraid they would judge her.

Aunt Amber forwarded screen shots of her text message exchange with S.M. to S.M.'s father. *Id*. at 238. He contacted his local police department, which in turn contacted the South Park Police. S.M. and her father met with Officer Brian Rucienski on April 11, 2018. *Id*. at 144. Her father excused himself from the room when it became apparent that S.M. was uncomfortable discussing the sexual abuse in his presence. *Id*. at 149. The officer described S.M. as "emotional." *Id*. She cried so hard that she was often unable to speak. S.M. had to stop and collect herself frequently as she related the details of the latest assaults that had taken place in South Park, and abuse dating back to 2011. S.M. explained to Officer Rucienski she had not told anyone earlier because she was afraid that Appellant would hurt her and that her peers would judge her negatively. *Id*. at 151.

Officer Rucienski contacted the Allegheny County Police Sex Crimes Unit, and the case was assigned to Detectives Corinne Orchowski and Richard Keebler. During a subsequent interview with the detectives, S.M. provided details of the sexual assaults. The authorities also learned that S.M.'s younger sister, K.M., may have been a victim as well. Although K.M. had initially denied in a text message exchange with Aunt Amber that Appellant sexually assaulted her, she later acknowledged to her father, and then Detective

Orchowski, that Appellant had touched her breasts under her clothes multiple times in the South Park house. *Id*. at 354.

Based on her conversations with S.M. and K.M., Detective Orchowski consulted the Office of the District Attorney and obtained a warrant for Appellant's arrest. Following his arrest on April 13, 2018, Appellant agreed to speak with the detectives. He denied any inappropriate behavior but explained that he may have "accidentally' touched K.M. on her breasts or buttocks while they were "wrestling around." *Id*. at 374. Appellant also told the father of S.M. and K.M., who was wearing a wire, that he may have touched the private parts of one of the girls while "playing around." *Id*. at 246-47.

In September 2018, Detective Orchowski learned that K.W. may have also been abused by Appellant. *Id*. at 366. K.W. told the detective that when she was ten to twelve years old, she would often spend time at Appellant's home. On two occasions, Appellant touched her vagina underneath her clothes while she was at Appellant's home. *Id*. at 224-27. She also reported that she went on a camping trip with Uncle Carl when she was eleven years old. K.W. was asleep in the top bunk of a bunk bed when Appellant awakened her by laying on top of her and putting his penis inside her vagina. *Id*. at 219-23. At trial, K.W. agreed with defense counsel's suggestion that this occurred in the summer of 2016. It was stipulated that Appellant was

incarcerated throughout the summer of 2016, and Appellant asserted an alibi defense with regard to the rape claim asserted by K.W.

At the close of the evidence, the Commonwealth moved to withdraw all but three counts against Appellant involving S.M.:  rape of a child, involuntary deviate sexual intercourse ("IDSI") with a person less than sixteen, and unlawful contact with a minor.  As to K.M., the Commonwealth proceeded only on one count of indecent assault without consent.  All but two counts involving K.W. were withdrawn:  rape of a child and unlawful contact with a minor.  The jury found Appellant guilty of all six charges.

On July 3, 2019, as to S.M., the trial court sentenced Appellant to ten to twenty years of imprisonment for rape of a child; six to twelve years of imprisonment for IDSI, and seven to fourteen years for unlawful contact with a minor, with all sentences to run consecutively.  For his conviction of indecent assault of K.M., Appellant was sentenced to a consecutive term of ten to twenty months of imprisonment.  With regard to K.W., the trial court imposed a consecutive term of imprisonment of ten to twenty years on the rape conviction, and seven to fourteen years of imprisonment for unlawful contact with a minor, to run consecutive to each other and the other sentences imposed.  Appellant filed post-sentence motions, which were denied on July

26, 2019. This timely appeal followed, and Appellant complied with the trial court's Rule 1925(b) order. No Rule 1925(a) opinion was prepared.[2]

Appellant presents the following questions for our review, which we have re-ordered for ease of disposition:

    I.     W[hether] the evidence [was] insufficient to support a conviction for Count I-rape of a child, at CC# 2018-14030, because [Appellant] had an alibi defense that he was incarcerated during the only time that K.W. alleged that he had sexual intercourse with her?

    II.    Were the verdicts against the weight of the evidence because the complaining witnesses' testimony [were] unreliable?

    III.    Did the trial court err in not granting a mistrial when the Commonwealth did not provide the defense with exculpatory text message evidence until mid-trial?

    IV.    Did the trial court abuse its discretion when it imposed a manifestly excessive and unreasonable aggregate sentence that was not individualized , and that was based o[n] the crimes alone rather than on proper consideration of [Appellant's] character and rehabilitative needs?

Appellant's brief at 11-12 (unnecessary capitalization omitted).

When an appellate court reviews a claim "challenging the sufficiency of the evidence to support a conviction," it "must determine whether the evidence admitted at trial, as well as all reasonable inferences derived

---

[2] The administrative judge of the criminal division of the Allegheny County Court of Common Pleas, the Honorable Jill Rangos, ordered the record to be transmitted without a trial court opinion due to the unavailability of trial judge Mark Tranquilli, who had been placed on suspension. We note that Appellant does not contend that the trial judge's suspension or the circumstances surrounding it contributed to the alleged errors.

therefrom, viewed in favor of the Commonwealth, supports the jury's finding of all of the elements of the offense beyond a reasonable doubt." *Commonwealth v. Peck*, 242 A.3d 1274, 1279 (Pa. 2020) (citation omitted). A challenge to the sufficiency of the evidence presents a question of law. Hence, our scope of review is plenary, and our standard of review is *de novo*. *Commonwealth v. Bishop*, 936 A.2d 1136, 1141 (Pa.Super. 2007).

Appellant argues that the evidence that he raped K.W. was insufficient to sustain his conviction of that offense under 18 Pa.C.S. § 3121(c). K.W. testified that Appellant raped her on one occasion during a camping trip in the summer of 2016, which she agreed was June, July, or August of 2016. It was stipulated that Appellant was incarcerated from April 20, 2016 to January 26, 2017. Appellant contends that since he was incarcerated during those months, "it was impossible for him to have raped K.W. at a camping trip that summer."[3] Appellant's brief at 28. Given K.W.'s testimony that the rape occurred during that three-month span, he argued that a verdict that the rape occurred during some other point when there was no evidence to support such a claim would be "contradictory" and "based upon surmise or conjecture." *Commonwealth v. Karkaria*, 625 A.2d 1167, 1172 (Pa. 1993).

The Commonwealth counters that the jury simply did not believe that that the rape occurred in the summer of 2016. K.W. testified that the rape

---

[3] Appellant filed a Notice of Alibi on March 3, 2019.

occurred when she was eleven years old, and that she was born on May 20, 2004. *See* N.T. Jury Trial, 4/3-8/19, at 212, 219-223. The Commonwealth points out that the rape did not take place in the summer of 2016 because K.W. was twelve years old that summer. It contends that, "[t]he jurors, having heard both K.W.'s direct examination and [Jamie] Mesar's expert opinion that child sexual-assault victims are more focused on the act that is being forced upon them by an adult than they are the date on which the act is occurring, were thus free to reject what defense counsel elicited from the victim regarding the specific season and year in which the rape was believed to have occurred."[4] Commonwealth's brief at 21. Furthermore, the Commonwealth added that neither due process concerns nor other law required it to establish the precise date the rape took place as "the prosecution is afforded broad latitude in attempting to fix the date of offenses when there has been a continuing course of conduct, and '[t]his is especially true when the case involves sexual offenses against a child victim.'" *Id*. at 22 (quoting *Commonwealth v. Brooks*, 7 A.3d 852, 858 (Pa.Super. 2010)).

While Appellant acknowledges that courts afford young witnesses some leeway in pinpointing the dates they were victimized, he contends that K.W.

---

[4] The Commonwealth offered the expert testimony of Jamie Mesar, the Director of Operations at the UPMC Children's Hospital Child Advocacy Center. The trial court ruled that she was qualified to testify as an expert "in the fields of forensic interviewing and child abuse behaviors in general." N.T. Jury Trial, 4/3-8/19, at 301. She explained to the jury the many ways children talk about situations such as sexual abuse and how they recall them.

should not be given such leeway because she was fourteen years old when she testified at trial. *See* Appellant's brief at 34 (*distinguishing*, *e.g.*, *Commonwealth v. G.D.M.*, 926 A.2d 984, 985 (Pa.Super. 2007) (complaining witness was six-years old); and *Commonwealth v. Groff*, 548 A.2d 1237, 1239 (Pa.Super. 1988) (complaining witness was seven-years old)). Appellant relies upon *Karkaria*, in support of his claim that the verdict herein is "insufficient as a matter of law." *Id*. at 1172.

Under 18 Pa.C.S. § 3121(c), "A person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3121(c). As the trial court instructed the jury, the date on which the offenses occurred was not an essential element of any of the crimes charged. *See* N.T. Jury Trial, 4/3-8/19, at 512. Furthermore, K.W. testified that the rape occurred on a camping trip when she was eleven years old. Such testimony fixed the date of the offense with reasonable certainty. Moreover, we find K.W.'s age at the time when the crime was committed to be more relevant than her age at trial in gauging her ability to recall the precise date of victimization.

Finally, we find Appellant's reliance upon *Karkaria* misplaced. In that case, the complainant alleged that her stepbrother raped her more than three hundred times over a three-year period commencing when she was eight years old and he was seldom home. She described the same scenario for the

hundreds of alleged assaults, but was unable to provide details that would establish the elements of the crimes charged. In that case, the Court found that the complaining witness had a motive to fabricate, and further, that the large number of identical incidents defied belief. Herein, K.W. reported the details of the assaults to her grandmother and to the police that established the elements of the crimes charged. Furthermore, her account was consistent. Finally, K.W. had no motive to fabricate the allegations against Appellant. For all of these reasons, we find no merit in Appellant's claim that the evidence was insufficient to sustain his conviction for raping K.W.

Appellant's next issue is a challenge to the weight of the evidence. He alleges that the complaining witnesses' testimony was so unreliable as to render the verdicts against the weight of the evidence. *See* Appellant's brief at 64. In support thereof, he points to alleged inconsistencies in the witnesses' accounts.

In reviewing a weight challenge, we are mindful of the following. "A new trial is warranted [pursuant to a weight claim] only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citation omitted). That decision is within the sound discretion of the trial court. *Commonwealth v. Stokes*, 78 A.3d 644, 650 (Pa.Super. 2013). On appeal we do not review the underlying question of whether the verdict is

against the weight of the evidence, but rather, the trial court's exercise of its discretion. ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013).

Appellant filed a post-sentence motion seeking a new trial based on a verdict that was against the weight of the evidence. He focused therein on testimony provided by his adult family members that they were always in the homes in Belle Vernon, Fayette City, and South Park, over the seven year period when the sexual assaults allegedly occurred, making it unlikely that he had the ability to carry out the assaults. In addition, his daughter was in the same room for some of the alleged assaults, which he maintained rendered the complaining witnesses' accounts unreasonable. He points to inconsistent testimony from the victims. Moreover, Appellant's mother testified that she had reprimanded K.W. for rifling through her drawers, implying that this incident supplied the motivation for K.W. to manufacture her claims of abuse against Appellant.

The law is well settled that "[a] jury is entitled to resolve any inconsistences in the Commonwealth's evidence in the manner that it sees fit." ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1080 (Pa. 2017). Furthermore, even inconsistencies in eyewitness testimony are not sufficient to warrant a new trial on the ground that the verdict was against the weight of the evidence. ***See Clay***, ***supra*** at 1055.

The jury saw the witnesses, heard the alleged inconsistencies, and had the opportunity to assess the credibility of the witnesses. Furthermore, the

jury heard that Appellant admitted on several occasions that he may have "accidentally" touched the girls' private parts when "playing around" with them. *See* N.T. Jury Trial, 4/3-8/19, at 246-47, 375.

The trial court denied the motion for new trial based on Appellant's claim that the verdict was against the weight of the evidence. While we do not have the benefit of the trial court's reasoning, we infer from the court's comments at sentencing that the jury's verdict did not shock its sense of justice. ***Commonwealth v. Landis***, 89 A.3d 694, 699 (Pa.Super. 2014) (affirming that a new trial based on a weight of the evidence claim is warranted only "where the factfinder's verdict is so contrary to the evidence that it shocks one's sense of justice"). Moreover, after a thorough review of the certified record, we find no facts or inferences that disclose that the trial court palpably abused its discretion in denying Appellant's motion for a new trial based on the weight of the evidence. No relief is due.

Appellant's third claim involves alleged error on the part of the trial court in denying a defense motion for mistrial when the Commonwealth failed to provide the defense with exculpatory text message evidence before trial in violation of ***Brady v. Maryland***, 373 U.S. 83 (1963). Specifically, the Commonwealth possessed a text message containing K.M.'s denial that Appellant touched her inappropriately. Appellant contends that he received this key piece of exculpatory evidence too late to effectively craft his defense.

The applicable law is as follows:

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice.

*Commonwealth v. Rashid*, 160 A.3d 838, 847 (Pa.Super. 2017) (citation omitted). "The remedy is an extreme one and is required only when an incident is of such a nature that its unavoidable effect deprives a defendant of a fair and impartial tribunal." *Id*.

When an appellate court reviews a trial court's order granting or denying a mistrial, we must determine whether the trial court abused its discretion. *Id*. "The court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason." *Id*.

The underlying error alleged herein is the Commonwealth's failure to provide the defense in discovery with the text message from K.M. in which she denied that Appellant had sexually abused her. The defense contends that this was *Brady* material, *i.e.*, "exculpatory or impeaching evidence, favorable to the defense." *Commonwealth v. Brown*, 200 A.3d 986, 993 (Pa.Super. 2018). Appellant asserts that the Commonwealth violated *Brady* when it withheld such evidence from the defense.

The following principles inform our review. It is the defendant's burden to prove that ***Brady*** evidence was suppressed by the prosecution to the prejudice of the defendant. ***See Commonwealth v. Cam Ly***, 980 A.2d 61, 75 (Pa. 2009). Moreover, as with discovery violations generally, a defendant is not automatically entitled to a new trial. He must also "show how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure." ***Id***. (internal quotation marks and citations omitted).

The Commonwealth contends there was no ***Brady*** violation herein because the tardiness of the disclosure of the text-message exchange had no detrimental effect on Appellant's case. It maintains that the jury was aware early on in the trial that K.M. initially denied that Appellant had touched her inappropriately. ***See*** Commonwealth's brief at 27. Hence, the trial court did not abuse its discretion in denying a mistrial.

The record reveals the following. S.M. was the first witness to testify at trial. She identified a series of screenshots of text messages exchanged between herself and her Aunt Amber, Appellant's wife. Amber asked S.M. if Appellant had ever touched her inappropriately, to which S.M. responded in the affirmative. On cross-examination, defense counsel asserted that, in that same exchange, there was a screenshot in which her sister K.M. "actually denies ever being assaulted by [Appellant]; right?" S.M. replied "Yes." N.T. Jury Trial, 4/3-8/19, at 126-27. Defense counsel continued: "Okay. And in

those messages, you guys talk about how [K.M.] denies ever being assaulted by [Appellant]; right?" *Id*. at 127. S.M. again replied, "Yes." *Id*. Thus, early on, the jury heard that K.M. initially denied the abuse, which was also confirmed by Amber Smith's testimony.[5] At trial, K.M. stated she could not remember whether she denied that Appellant sexually abused her when Amber questioned her.

At the beginning of the second day of trial, the trial court and counsel discussed the text message thread reproduced as Commonwealth Exhibit 1. At the first trial, the text message discussing K.M.'s denial was introduced into evidence as part of Commonwealth's Exhibit 1, but apparently omitted from the exhibit in the second trial. Defense counsel moved for a mistrial based on prosecutorial misconduct, claiming that Exhibit 1 did not match up.

The trial court pointed out that both the prosecutor and the defense attorneys had the wherewithal to examine the exhibits from the first trial and ascertain the discrepancy. The court also noted that K.M.'s denial was addressed during the cross-examination of both S.M. and Amber Smith. Thus,

_____

[5] It appears from this exchange that defense counsel knew about the text message exchange wherein K.M. denied the abuse. It is unclear how and when defense counsel learned of the existence of the text message, but we note the following. This was the second trial of the cases involving S.M. and K.M. The first trial resulted in a mistrial when the jury could not reach a verdict. At the first trial, the text message was introduced into evidence. Apparently neither the Commonwealth's attorney nor the public defender, both of whom were new to the case, were aware of the text message. However, presumably Appellant was aware of it as he was present at the first trial.

the only thing the jury knew was that K.M. denied that any touching took place. Nonetheless, the trial court invited the defense to introduce the missing text message, or have the additional pages added to Commonwealth Exhibit 1, or to recall K.M. to confront her with the screenshots of the texts to see if that refreshed her recollection. *Id*. at 284. The defense indicated that it would have the Commonwealth introduce a new Exhibit 1 through its detective, and then cross-examine the detective as to why there was a new Exhibit 1 being introduced with the additional messages. *Id*. at 288. Instead, the defense called Detective Richard Keebler in its own case, and the detective explained that he became aware that Commonwealth Exhibit 1 was missing some text messages between Amber and S.M. *Id*. at 406. An amended Commonwealth Exhibit 1 was introduced that included the missing text messages.

Thus, the record suggests that the missing text messages were not exclusively in the possession of the Commonwealth since they had been introduced at the first trial and all counsel had access to those exhibits. Thus, there was no ***Brady*** violation. Moreover, even though the text messages were exculpatory, we find no prejudice. The content of the missing text messages, specifically K.M.'s denial in response to Amber's question whether Appellant had sexually abused her, was introduced into evidence with the first witness at trial. While the defense argues that it may have altered its defense strategy if it had been aware of the texts prior to trial, it fails to explain what it would

have done differently. For these reasons, we find no abuse of discretion on the part of the trial court in denying a mistrial based on the missing texts.

Appellant's final issue is a challenge to discretionary aspects of his sentence. The law is well settled that an appellant is not entitled to review of a discretionary sentencing claim as of right. *See Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa.Super. 2010). We treat his appellate brief as a petition for permission to appeal. Before we may reach the merits of such an issue, we conduct a four-part analysis to determine:

> 1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, **see** Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, **see** 42 Pa.C.S. § 9781(b).

*Id*. at 170 (citation omitted).

In the case before us, Appellant filed a timely appeal, a timely post-sentence motion raising the issue, and included a statement pursuant to Pa.R.A.P. 2119(f) in his appellate brief. Thus, he has met the technical requirements for review of a discretionary sentencing claim. The only remaining question is whether he has presented a substantial question under the Sentencing Code, 42 Pa.C.S. § 9781(b). We make that determination on a case-by-case basis by examining whether Appellant made a colorable argument that his sentence is either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms governing

sentencing. *See Commonwealth v. Diehl*, 140 A.3d 34, 44-45 (Pa.Super. 2016).

Appellant maintains that he has raised three substantial questions. First, he relies upon *Moury*, *supra* at 171-72, to argue that the aggregate sentence was "unduly harsh, considering the nature of the crimes and the length of imprisonment." He alleges further that the trial court focused only on the impact of the crimes on the victims at the expense of consideration of his character and rehabilitative needs. *See Commonwealth v. Riggs*, 63 A.3d 780, 787 (Pa.Super. 2012) (finding substantial question when appellant alleged that court failed to consider relevant sentencing criteria such as protection of the public, gravity of the offense, and appellant's rehabilitative needs). Finally, he contends that his sentence was not individualized. *See Commonwealth v. Luketic*, 162 A.3d 1149, 1160, 1162 (Pa.Super. 2017) (finding substantial question when appellant argued that court determined sentence prior to sentencing hearing, "thereby violating the fundamental norm that Appellant's sentence be individualized").

Since we have previously concluded that claims of excessiveness coupled with averments that the trial court deviated from sentencing norms raise a substantial question, we find Appellant is entitled to review. *See Commonwealth v. Coulverson*, 34 A.3d 135, 143 (Pa.Super. 2011); *Commonwealth v. Perry*, 883 A.2d 599, 602 (Pa.Super. 2005).

We thus turn to the merits of Appellant's discretionary sentencing claim. Our High Court acknowledged in **Commonwealth v. Walls**, 926 A.2d 957, 961 (Pa. 2007), "[s]entencing is a matter vested in the discretion of the sentencing judge." Hence, we review it for an abuse of discretion. **Id**.

Appellant contends that the trial court abused its discretion when it sentenced Appellant to an aggregate sentence of forty and one-half to eighty-one years of total confinement. In support thereof, he alleges that his "sentence was manifestly excessive, not individualized, and imposed based on the nature of the crimes and victim impact alone at the expense of proper consideration of Appellant's character and rehabilitative needs." Appellant's brief at 49. Appellant points out that he will not be eligible for parole until he is more than seventy years old, and thus, his bond with his children will be severed, and he will be effectively "precluded from any meaningful chance of rehabilitation in and positive contribution to the community." **Id**. In imposing the sentence, Appellant maintains that the court did not consider mitigating evidence such as his mental illness, employment history, scant criminal record, and the fact that he had not an opportunity to participate in sex offender therapy, but rather, focused solely on the impact of the crimes on the victims. **Id**. at 54. Moreover, Appellant alleges that the trial court merely said that it considered the guidelines, but it did not recite the guidelines on the record. Finally, in justifying the imposition of consecutive sentences, Appellant argues that the trial court gave the same "stock speech." **Id**. at 56.

- 20 -

The record of the sentencing hearing does not support Appellant's contentions. The Commonwealth introduced a certified copy of Appellant's January 7, 2015 Fayette County conviction of two third-degree felony offenses of unlawful contact with a child and corruption of a minor, as well as a first-degree misdemeanor indecent assault of a child less than thirteen years of age. *See* Commonwealth Exhibit 1. Appellant was sentenced therein to one to two years of incarceration and ordered to undergo sex offender therapy. He committed some of the conduct charged in the current cases prior to that 2015 conviction, but other sex offenses continued until 2018, long after that conviction. Victim impact statements from S.M. and K.M. were introduced as Commonwealth Exhibits 2 and 3.

The trial court stated it had reviewed the presentence investigation. **See** N.T. Sentencing, 7/3/19, at 14. Furthermore, it stated on the record that it had considered the sentencing guidelines, as well as mitigating and aggravating factors. *Id*. It mentioned specifically that it had contemplated Appellant's mental health issues and counsel's argument that a lengthy sentence would sever his bond with his older daughter.[6] *Id*. The court also indicated that it weighed Appellant's status as a Megan's law registrant when he committed at least some of the offenses herein. *Id*. The trial court

---

[6] At sentencing, defense counsel also apprised the trial court of Appellant's mental health issues and the deleterious effect of prolonged imprisonment on Appellant's bond with his daughter.

believed Appellant to be a danger to society and that if he was supervised in the community, he would re-offend. *Id*. at 15.

The court imposed sentences at each count that did not exceed the statutory maximums, and ran the sentences consecutively. As Appellant reluctantly acknowledges, it is the consecutive nature of the sentences that resulted in an aggregate sentence that he claims is excessive.

We find no abuse of discretion. Appellant was convicted of multiple offenses arising out of different incidents involving three young victims. In such circumstances, he is "not entitled to a 'volume discount' on [his] aggregate sentence." *Commonwealth v. Foust*, 180 A.3d 416, 434 (Pa.Super. 2018). Furthermore, it is within a trial court's sound discretion whether to run a sentence consecutively or concurrently to other sentences being imposed. *See Commonwealth v. Bowen*, 55 A.3d 1254, 1265 (Pa.Super. 2012). The trial court noted that each count "involved a separate or series of decisions that [Appellant] made as to each of these three girls." N.T. Sentencing, 7/3/19, at 19. In each instance, Appellant "had chances to make different choices . . . [b]ut at each turn, [he] chose to make the wrong choice." *Id*.

Our review of the record dispelled any notion that the trial court "ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision" in deciding to run Appellant's sentences consecutively. *Commonwealth v.*

- 22 -

*DiSalvo*, 70 A.3d 900, 903 (Pa.Super. 2013). These were serious crimes perpetrated upon vulnerable young children by a person who had already been convicted of sexual offenses against children, thus demonstrating the likelihood that he would reoffend. On these facts, the trial court's decision to run the sentences consecutively was not an abuse of discretion and did not result in an excessive sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/09/2021